202

SCHENLEY DISTILLERIES, INC. *v.* UNITED STATES (No. 4741) [1]

[1] C. A. D. 519.

United States Court of Customs and Patent Appeals, March 11, 1953

*John D. Rode* for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks* and *William J. Vitale*, special attorneys, of counsel), for the United States.

[Oral argument February 11, 1953, by Mr. Rode and Mr. Weeks]

Before GARRETT, Chief Judge, and O'CONNELL, WORLEY, COLE, and JACKSON (retired), Asosciate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment entered by the Third Division of the United States Customs Court in conformity with its decision, C. D. 1406, 28 Cust. Ct. 174, overruling the protest of the importer against the "ascertainment and reliquidation of duties," by the Collector of Customs at the port of Indianapolis, Indiana, and his "decision assessing duty under the Tariff Act of 1930, as amended, at $2.50 per proof or wine gal. on too great a quantity of Alcohol." The official papers show that the merchandise consisted of grain alcohol imported from Brazil. The protest, No. 146,283–K, was dated February 4, 1949.

The first paragraph of the decision of the Customs Court reads:

JOHNSON, Judge: The question at issue in this case involves the quantity of alcoholic beverages upon which the collector assessed duty in reliquidating the entry in conformity with a decision and judgment of this court. The plaintiff claims that the collector should have assessed duty only upon the quantity subject to the imposition of internal revenue tax by reason of the amendment of paragraph 813 of the Tariff Act of 1930 by Public Law 612, approved June 8, 1948.

The case was submitted to the Customs Court for trial upon the official papers and a stipulation of facts entered into by counsel for the respective parties.[1]

It appears that the merchandise was embraced in a warehouse entry made August 23, 1946, and that the entry was liquidated May 1, 1947. Customs duty was assessed on the basis of 21,402.99 proof gallons of liquor and Internal Revenue taxes were assessed on the basis of 21,295.9 proof gallons.

The discrepancy between the gallonage upon the basis of which customs duty was assessed and that upon which Internal Revenue taxes were assessed was due to differences then existing in the laws and regulations providing for customs taxation of alcoholic beverages and those providing for domestic or internal taxation of such beverages. This was well understood by those conversant with what often is referred to in common parlance as "the liquor business."

No complaint of a legal nature was lodged against the Internal Revenue taxes assessed at $9.00 per proof gallon, but the importer, claiming that there should have been an allowance in, or a deduction from, the customs duties because of losses of gallons occasioned by breakage of containers and leakage while the liquor was in transit, filed a protest by which recovery was sought of a portion of the

---

[1] The stipulation reads:

MR. QUALEY [for importer]: * * *

I offer to stipulate with Government counsel that the merchandise involved in this protest consists of certain alcoholic beverages dutiable under the provisions of Schedule 8 of the Tariff Act of 1930, as amended; that the merchandise was entered by Schenley Distilleries, Inc., at the Port of Lawrenceburg in the Customs District of Indiana on August 23, 1946 under Warehouse Entry 34–L; that the entry was liquidated on May 1, 1947, wherein duty was assessed on the basis of 21402.99 Proof Gallons of liquor at the rate of $2.50 per gallon and Internal Revenue taxes were assessed on the basis of 21295.9 Proof Gallons at the rate of $9.00 per gallon; that protest was duly filed on June 13, 1947 against the liquidation of this entry claiming that duty had been assessed on too great a quantity of merchandise; that this protest when transmitted to the United States Customs Court was docketed as #132144–K and submitted for decision of the Court on the basis of a stipulation that the issue involved was the same in all material respects as that involved in the case of United States v. Somerset Importers Ltd., 33 C. C. P. A. (Customs) 138, C. A. D. 328; that said protest 132144–K was decided on April 22, 1948 and was reported in Abstract No. 52288, as The Old Quaker Co. et al. v. United States, 20 Cust. Ct. 308; that the Judgment Order of the Court was in the following language—

It is hereby ordered adjudged and decreed: that the protests in this case enumerated in Schedule A hereto attached and made part of our decision herein; are sustained as to the claim for refund of duties upon such losses in transit of the alcoholic beverages contained in the packages covered by said entries as were caused by breakage, leakage or damage, insofar as such losses appear upon the gauger's return, as verified by the affidavits of the importers, and only as to such as are 10 per cent or more of the contents of the packages, and the Collector will reliquidate the entries making allowance in duties in accordance with law.

I further offer to stipulate that in compliance with said mandate the entry described above was reliquidated by the Collector of Customs on December 23, 1948 which reliquidation resulted in the assessment of duty on 21352.76 Proof Gallons at the rate of $2.50 per gallon and the assessment of Internal Revenue taxes on the same quantity as was assessed on liquidation, namely, 21295.9 Proof Gallons at the rate of $9.00 per gallon.

That while said entry was still before the Collector and prior to reliquidation a demand was made under date of August 19, 1948 requesting said Collector to make further allowances in accordance with the provisions of Public Law 612, approved June 8, 1948; that the said Collector refused to make such further allowances in reliquidating the entry and the instant protest was filed against said reliquidation.

MR. VITALE: [for the United States] Upon the authority of the Assistant Collector of Customs, Emmie Anderson, The Government is willing to so stipulate.

duties assessed in the collector's liquidation of May 1, 1947. Importer's protest was No. 132,144–K.

It was stipulated that the merchandise and issues in the case were similar in all material respects to those involved in the case of *United States* v. *Somerset Importers Ltd.*, 33 C. C. P. A. (Customs) 138, C. A. D. 328, in which this court affirmed a judgment of the Customs Court granting the importer there certain relief on account of breakage of containers, and leakage.

So, the Customs Court sustained the protest there made (No. 132,144–K) in Abstract decision No. 52,288, rendered in connection with or as a part of a case styled *The Old Quaker Co. et al.* v. *United States*. The judgment was entered April 22, 1948, 20 Cust. Ct. 308.

No appeal was taken from the Customs Court's judgment and in due course the mandate of that court went to the collector at Indianapolis.[2]

He reliquidated on December 23, 1948, in conformity with the judgment, and assessed customs duty at the rate of $2.50 per gallon on only 21,352.76 proof gallons instead of 21,402.99, the basis of the first liquidation.[3]

The Internal Revenue taxes at the rate of $9.00 per gallon on the basis of 21,295.9 proof gallons were not changed.

On June 8, 1948, subsequent to the rendition of the judgment of the Customs Court on April 22, 1948, but prior to the collector's reliquidation in conformity therewith on December 23, 1948, Public Law 612 of the 80th Congress was approved. It read:

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That paragraph 813 of schedule 8 of the Tariff Act of 1930 is amended to read as follows:

Par. 813. Notwithstanding any other provision of this Act, the *duties* imposed on beverages in this schedule which are subject also to internal revenue taxes *shall be imposed only on the quantities subject to such taxes.* (Italics ours.)

Sec. 2. This amendment shall be effective as to all such merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and shall apply also to *any such merchandise entered or withdrawn before that day with respect to which the liquidation of the entry or withdrawal, the exaction, or the decision as to dutiable quantity has not become final by reason of Section 514, Tariff Act of 1930.* (Italics ours.)

Determination of the issue here involved depends upon the interpretation given the phraseology which we have italicized in section 2 of the Act.

Briefly, it is contended on behalf of the importer that the decision as to dutiable quantity had not become final with the decision of the

---

[2] The liquor is said to have been warehoused at Lawrenceburg, Indiana.

[3] It is noted that the difference between the gallonage assessed with customs duty under the first liquidation on May 1, 1947 and that assessed under the reliquidation on December 23, 1948, was 50.23 gallons and the difference between the gallonage upon which customs duties were assessed upon reliquidation and the gallonage upon which internal revenue taxes were assessed at all times was 56.86 gallons.

court on April 22, 1948, while counsel for the Government contend that it had become final by reason of the court's decision.

It is noted that the stipulation recites that under date of August 19, 1948, a "demand was made" "requesting said collector to make further allowances" in accordance with the provisions of Public Law 612, approved June 8, 1948.

It may be stated at this juncture that there is nothing in either the official papers or the stipulation of facts which shows the manner in which the "demand" or "request" for "further allowances," whichever it may have been, was presented to the collector.

However, the "Report of Collector on Protest" transmitted to the Customs Court on February 14, 1949 (meaning, of course, the here-involved protest, 146,283–K, dated February 4, 1949, filed after the reliquidation on December 23, 1948) states:

> The protested decision was reviewed by me in accordance with section 515, Tariff Act of 1930, and was affirmed.
> Basis of affirmation: Our interpretation of Tariff Act, and Customs Regulations. The protest was received within the statutory period.

From that and from the fact that no question has been raised by counsel for the Government respecting the manner or form of presenting the "demand" or "request" to the collector, we are justified in assuming that it was so presented as to render proper his attention and consideration, and that such consideration led to the refusal decision against which the protest before us was filed. The protest is specific in stating:

> \* \* \* You should have assessed duty only on the quantity subject to Internal Revenue tax in accordance with Par. 813 as amended by Public Law 612.

It is necessary, in deciding the issue, to look to provisions in both sections 514 and 515 of the Tariff Act of 1930 and, for convenience, those sections are here quoted:

### Sec. 514. Protest Against Collector's Decisions.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry

or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

## Sec. 515. Same.

Upon the filing of such protest the collector shall within ninety days thereafter review his decision, and may modify the same in whole or in part and thereafter remit or refund any duties, charges, or exaction found to have been assessed or collected in excess, or pay any drawback found due, of which notice shall be given as in the case of the original liquidation, and against which protest may be filed within the same time and in the same manner and under the same conditions as against the original liquidation or decision. If the collector shall, upon such review, affirm his original decision, or if a protest shall be filed against his modification of any decision, and, in the case of merchandise entered for consumption, if all duties and charges shall be paid, then the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the United States Customs Court for due assignment and determination, as provided by law. Such determination shall be final and conclusive upon all persons, and the papers transmitted shall be returned, with the decision and judgment order thereon, to the collector, who shall take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs and Patent Appeals within the time and in the manner provided by law.

It is obvious that the "decisions" and "refusals," like the "liquidation" and "reliquidation" referred to in section 514 as being final and conclusive upon all persons unless a protest be filed within 60 days, relate solely to decisions, etc. by the collector.

However, there are two general classes of reliquidations. (a) The collector reliquidates in cases where he himself reconsiders and *decides* that an original liquidation by him was erroneous; (b) he reliquidates upon mandate from the courts.

In the instant case his reliquidation of December 23, 1948, was in the second general class, that is, it was made not as a result of his decision that his original liquidation of May 1, 1947 was erroneous, but as a result of the holding by the Customs Court that it was erroneous, as set forth in Abstract 52,288, *supra*. So, as to the finality of the decision upon which the protested reliquidation was predicated, we must look to and consider the meaning of the phraseology in section 515, reading:

* * * Such determination [by the Customs Court] shall be final and conclusive upon all persons, and the papers transmitted [to the court by the collector] shall be returned, with the *decision* and *judgment order* thereon, to the collector, who *shall* take action accordingly, except in cases in which an appeal shall be filed in the United States Court of Customs and Patent Appeals within the time and in the manner provided by law. (Italics ours.)

The collector had no further function to perform except the purely

formal reliquidation, and the strictly clerical task of computing the gallonage. He had no decision to make.

No appeal having been taken to the Court of Customs and Patent Appeals, it seems clear to us that the decision of the Customs Court became final as to dutiable quantity 60 days after its decision was reported in Abstract 52,288, *supra,* and the case was not open in August 1948 for demands or requests for further allowances by reason of the passage of Public Law 612, June 8, 1948.

It is pointed out that on that date several of the 60 days allowed for an appeal of the decision in Abstract 52,288 still remained. We do not think that effects rights in any particular. What appellant might have done during those remaining days we do not undertake to say, the fact being that it did nothing.

The decision of the trial court in this case is a comprehensive one, numerous decisions being ably reviewed. We are in harmony with it and it is *affirmed.*

JACKSON, J., retired, was recalled to participate in this case in place of JOHNSON, J., absent on account of illness.